IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| FRANCES BOSWELL O/B/O ) | |
| ODESSA BOSWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 2:22-cv-27-SMD |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# **OPINION & ORDER**

Odessa Boswell ("Claimant Boswell") applied for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"), alleging disability beginning February 24, 2017. Tr. 56, 58. Claimant Boswell's application was denied at the initial administrative level. Tr. 90. Claimant Boswell died in May 2018. Tr. 364. Thereafter, Claimant Boswell's mother, Francis Boswell ("Plaintiff Boswell"), was substituted in her place. Tr. 110. Plaintiff Boswell requested and received a hearing before an Administrative Law Judge ("ALJ") who found that Claimant Boswell was not disabled. Tr. 18-32, 37, 90. Plaintiff Boswell appealed to the Social Security Appeals Council ("Appeals Council"), which denied review. Tr. 7. Therefore, the ALJ's opinion became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff Boswell appeals the Commissioner's decision under 42 U.S.C. § 405(g). For following reasons, the

undersigned AFFIRMS the Commissioner's decision.[1]

## I. STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th

---

[1] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 5); Def.'s Consent (Doc. 6).

[2] *McDaniel* is an SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Cir. 2004). A claimant's RFC is what the claimant can still do—despite her impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy she can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[3] or (2) the testimony of a vocational expert ("VE").[4] *Id.* at 1239-40.

## II.   STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the ALJ applied the correct legal standards. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence, or the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215,

---

[3] The Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[4] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

1218 (11th Cir. 1991). A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

For purposes of judicial review, "[s]ubstantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F.2d at 1145.

### III. ADMINISTRATIVE PROCEEDINGS

Claimant Boswell was 30 years old on her alleged disability date, and 32 years old at the time of her death. Tr. 153, 364. She obtained a master's degree and previously worked as a waitress/cashier in the fast-food industry. Tr. 185. Claimant Boswell alleged disability due to anxiety, depression, eye coloration darkening, and several skin related issues. Tr. 41-45, 184.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for Claimant Boswell's disability determination. At step one, the ALJ found Claimant Boswell had not engaged in substantial gainful activity since her alleged onset date. Tr. 24. At step two, the ALJ found Claimant Boswell suffers from the following severe impairments: skin disorder; depression; and anxiety. Tr. 24. At step

4

three, the ALJ found Claimant Boswell does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 24.

The ALJ then determined Claimant Boswell's RFC, finding she has the capacity to perform sedentary work with additional postural and environmental limitations. Tr. 26. At step four, the ALJ found Claimant Boswell unable to perform any past relevant work. Tr. 30. At step five, the ALJ considered Claimant Boswell's age, education, work experience, and RFC and found that jobs exist in significant numbers in the national economy that she could perform. Tr. 30. Accordingly, the ALJ found Claimant Boswell was not disabled from her alleged onset date through the decision date. Tr. 26.

## IV. PLAINTIFF BOSWELL'S ARGUMENT

Plaintiff Boswell presents three arguments before the Court. First, she argues that the ALJ failed to properly apply the Listings to Claimant Boswell's skin disorder. Pl.'s Br. (Doc. 17) pp. 8-12. Second, Plaintiff Boswell argues that the ALJ improperly discredited the opinion of Dr. Lauren Graham. *Id*. at 12-14. Third, Plaintiff Boswell argues that the ALJ's RFC determination is not supported by substantial evidence because it fails to account for any limitation in Claimant Boswell's ability to handle and/or finger despite her skin disorder. *Id*. at 14-15. As explained below, the undersigned finds that the ALJ did not commit reversible error.

V.     ANALYSIS

    A.     **The ALJ Properly Considered the Listings as to Claimant Boswell's Skin Condition**

"The Listing of Impairments describes, for each major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). To "meet" a Listing, the claimant must provide medical evidence documenting that her impairments meet the specific criteria of the Listing and its duration requirement. 20 C.F.R. §§ 404.1525(c), 416.925(c). To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the criteria" of a Listing. 20 C.F.R. §§ 404.1526(a), 416.926(a). If the claimant's impairments meet or equal a Listing, the claimant will be found disabled and the sequential evaluation will end at Step 3. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant's burden of proving that her impairment meets or equals a Listing is a heavy one because "the [L]istings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

The ALJ is responsible for deciding whether an impairment meets or equals a Listing. 20 C.F.R. §§ 404.1526(e)(3), 416.926(e)(3). Statements about whether a claimant meets or equals a Listing are neither valuable nor persuasive on the issue of whether a claimant is disabled, and the ALJ need not provide any analysis of how he considered such evidence. 20 C.F.R. §§ 404.1520b(c)(3)(iv), 416.920b(c)(3)(iv); *see also Lasauna H. v. Kijakazi*, 2022 WL 17541770, at *2 (N.D. Ga. Sept. 22, 2022) (affirming ALJ's assessment that a treating physician's opinion on an issue reserved for the Commissioner is "neither

6

valuable nor persuasive to the issue of whether an applicant is disabled"). Further, the ALJ is not required to "mechanically recite the evidence leading to [the Listings] determination." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986); *see also Imberman v. Kijakazi*, 2023 WL 2815081, at *6 (S.D. Fla. Jan. 31, 2023) (same).

Plaintiff Boswell argues that the ALJ did not properly consider Claimant Boswell's skin conditions under the Listings. The Listings in Section 8.00 for skin disorders generally require a claimant to have (1) extensive skin lesions that (2) persist for at least 3 months despite (3) continuing treatment as prescribed. 20 C.F.R. Part 404, Subpart P, Appendix I Sections 8.01-8.07. "Extensive skin lesions" are defined as lesions that "involve multiple body sites or critical body areas, and result in a very serious limitation." 20 C.F.R. pt. 404, subpt. P, app. 1, § 8.00(C)(1). Examples include: (1) "Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity;" (2) "Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements"; and (3) "Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate." *Id*.

Here, the ALJ found that Claimant Boswell's skin condition did not meet any "subsections under Section 8.00[.]" Tr. 24. The ALJ reasoned that no provider opined that Claimant Boswell met any Listing, that there was difficulty diagnosing her condition, and that she "failed to fully comply with treatment" as prescribed by her physicians. Tr. 24.

### 1. Plaintiff Boswell Has Not Shown that Claimant Boswell's Skin Condition Met a Section 8.00 Listing

Plaintiff Boswell does not identify the specific Listing that she claims Claimant Boswell meets. This is likely because—as the ALJ noted—there was difficulty in diagnosing Claimant Boswell's condition. *See* Tr. 24. Importantly, though, "[t]o 'meet' a Listing, a claimant *must have a diagnosis included in the Listings*." *Wilson*, 284 F.3d at 1224 (emphasis added). Because Claimant Boswell does not have a diagnosis included in the skin disorder Listings, Plaintiff Boswell cannot show that Claimant Boswell "meets" a skin disorder Listing. Thus, the ALJ did not err in this finding.

### 2. Plaintiff Boswell Has Not Shown that Claimant Boswell's Skin Condition Equals a Section 8.00 Listing

Plaintiff Boswell has not shown that Claimant Boswell's skin condition medically equals a Listing in Section 8.00. To prove that Claimant Boswell's skin condition medically equals one of the Listings in Section 8.00, Plaintiff Boswell must present medical evidence which describes how the impairment is equivalent to a Listing. *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986); *Freeman v. Kijakazi*, 2023 WL 2446621, at *5 (M.D. Fla. Mar. 10, 2023) (noting that "the claimant has the burden of establishing his impairments equal a listing") (citing *Bell*, 796 F.2d at 1353). Plaintiff Boswell's evidence falls short of this requirement.

First, Plaintiff Boswell points to a letter written by Claimant Boswell's treating physician, Dr. Lauren Graham, stating that Claimant Boswell suffers from erythroderma, "which means that her entire skin was red and covered with [a] rash[.]" Tr. 362. The letter

8

also notes that various treatments were unsuccessful in addressing Claimant Boswell's rash. Tr. 362. Plaintiff Boswell acknowledges that "the letter does not expressly outline the requirements to meet and/or equal a listing under Section 8.00." Mot. (Doc. 17) p. 9. However, she invites the Court to "infer[]" that Dr. Graham "likely believed [Claimant Boswell's] condition would meet or medically equal a listing under Section 8.00." *Id*.

Dr. Graham's letter does not show that Claimant Boswell's condition medically equals the requirements of any skin disorder Listing. While the letter sets forth information about the extensiveness of Claimant Boswell's condition and the difficulty encountered in diagnosis and treatment of her rash, the letter does not provide any information showing the duration of Claimant Boswell's skin condition or how the condition[5] resulted in "a very serious limitation." Thus, the letter does not show that Claimant Boswell's skin condition equals a Section 8.00 Listing, and the Court declines to infer, as Plaintiff Boswell requests, that Dr. Graham "likely believed" Claimant Boswell's condition met or medically equaled a Listing.

Second, Plaintiff Boswell points to evidence showing that Claimant Boswell "presented on multiple occasions with a rash that was 'head to toe'" that was difficult to diagnose and treat. Mot. (Doc. 17) p. 10 (citing Tr. 249, 255, 261, 283, 291, 294, 304, 318). Plaintiff Boswell argues that, under this evidence, Claimant Boswell meets the

---

[5] To be sure, the letter, dated March 2019, notes that Claimant Boswell began treatment with Dr. Graham in June 2017. Tr. 362. While this shows that Claimant Boswell received treatment for approximately two years, it does not show that the condition persisted for at least three months despite continuous treatment. While it is possible to make this inference, the Court declines to do so considering it is Plaintiff Boswell's heavy burden to show that Claimant Boswell's condition equals a Listing.

requirements for a skin disorder Listing. *Id*. But while this evidence indicates that Claimant Boswell's rash involved multiple body sites and/or critical body areas, it does not show that the rash resulted in "a very serious limitation" of her joints, extremities, fine/gross motor movements, ability to ambulate, etc. Thus, this evidence does not show that Claimant Boswell's skin condition equals a Section 8.00 Listing.

Further, even if Plaintiff Boswell could show that Claimant Boswell's skin condition resulted in "a very serious limitation," substantial evidence supports the ALJ's conclusion that Claimant Boswell's condition did not equal a Listing because Claimant Boswell failed to fully comply with prescribed treatment. The record shows that physicians advised Claimant Boswell to stop drinking malt liquor because they suspected an allergy to malt liquor as the cause of her rash. *See, e.g.*, Tr. 271, 291-95, 318, 322. However, the ALJ noted that, despite these recommendations, Claimant Boswell continued to drink. Tr. 27 (ALJ noting that Plaintiff Boswell testified that Claimant Boswell "was informed that she should stop drinking due to a possible allergy from malt liquor, but continued to drink"); Tr. 28 (ALJ noting that in August 2017 "an allergy to malt liquor was considered due to [Claimant Boswell's] extensive consumption of malt alcohol" and that in October 2017 she "continued to report alcohol use"). While Plaintiff Boswell points to evidence that Claimant Boswell "was 'clean' for Alcohol dependence in June 2017 and had stopped drinking malt liquor and only had approximately four drinks a week in September 2017," *see* Tr. 291, 296, this evidence is contradicted by Plaintiff Boswell's own testimony—which the ALJ acknowledged—that Claimant Boswell continued to drink

10

despite recommendations that she stop, *see* Tr. 47. Thus, even if Plaintiff Boswell could show that Claimant Boswell had extensive skin lesions as defined in Section 8.00, substantial evidence supports the ALJ's conclusion that Claimant Boswell's condition did not meet a Section 8.00 Listing because she has not shown that her condition persisted for at least three months despite continuing prescribed treatment.

In sum, the Court finds that Plaintiff Boswell has not met her heavy burden of showing that Claimant Boswell's skin condition met or medically equaled a Listing in Section 8.00. As such, the ALJ did not err at Step 3.

> **B.  Substantial Evidence Supports the ALJ's Evaluation of Dr. Graham's Statement**

A medical opinion "is a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s)." 20 C.F.R. § 404.1513(a)(2). Examples of medical opinions include "statements from a physician that a claimant can never lift more than twenty pounds, cannot understand and follow complex instructions, cannot tolerate anything more than occasional interaction with the public, or any other comments about the extent to which a claimant can or cannot perform a work-related function." *Dye v. Comm'r of Soc. Sec.*, 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022). Medical findings or treatments, such as test results, prescriptions, or surgery recommendations, are not

...

medical opinions.[6] Additionally, general statements concluding that a claimant cannot work are not medical opinions.[7]

When considering medical opinions, the ALJ is not required to defer or give any specific evidentiary weight to any medical opinion. 20 C.F.R. §§ 404.1520c, 416.920c(a). Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including whether the opinion is well-supported; whether the opinion is consistent with the record; the treatment relationship between the medical source and the claimant; the area of the medical source's specialization; and other relevant factors. 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)-(5). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) & (b)(2), 416.920c(a) & (b)(2). While the ALJ must explain how he considered the supportability and consistency factors, the ALJ need not explain how he considered the other factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Importantly,

---

[6] *See Maguire v. Saul*, 2021 WL 2284463, at *4 (M.D. Fla. June 4, 2021) (reasoning that medical findings are not medical opinions because they do not necessarily provide perspectives about the claimant's functional abilities and limitations); *Wood v. Comm'r of Soc. Sec.*, 2021 WL 2634325, at *5 (M.D. Fla. June 25, 2021) (holding the ALJ did not err by failing to weigh opinions where a claimant pointed to nothing in the medical evidence besides medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis, "none of which constitute 'medical opinions'"); *Lucas v. Comm'r of Soc. Sec.*, 2022 WL 2901219, at *4 (M.D. Fla. July 22, 2022) (reasoning that the ALJ was not required to evaluate an ARNP's description of claimant's level of pain as "10/10" because it was not a medical opinion); *Alisa M. v. Comm'r of Soc. Sec.*, 2022 WL 16752091, at *9 (N.D. Ga. Sept. 30, 2022) (holding that doctors' recommendation that claimant have surgery was not a medical opinion).

[7] *Smith v. Comm'r of Soc. Sec.*, 2022 WL 17076709, at *4 (M.D. Fla. Nov. 18, 2022) (holding that statements were not medical opinions where doctors "checked the box indicating that [the claimant's] narcolepsy impacted his ability to work" because the statements did not "specifically explain how narcolepsy impacted [the claimant's] ability to work and what [the claimant] could still do despite his narcolepsy").

when considering other medical evidence, the ALJ is not required to articulate his findings regarding persuasiveness. *Dye*, 2022 WL 970186, at *4.

Here, Dr. Graham's letter states that Claimant Boswell had erythroderma, "which means that her entire skin was red and covered with [a] rash." Tr. 362. The letter indicates that 100% of Claimant Boswell's body surface was involved and that her itch "affected her everyday life" and she could not sit still without scratching. *Id*. Dr. Graham also notes that Claimant Boswell would shed her skin, which "would have been difficult in a work environment." *Id*. Further, Dr. Graham opines that Claimant Boswell's "hands were cracked, which made it difficult to work" with them, and that her feet were affected, which made it difficult to stand for long periods of time. *Id*. Dr. Graham notes that, despite testing, she was unable to understand the cause of Claimant Boswell's rash and that she struggled with a treatment plan. *Id*. Finally, Dr. Graham opines that "[t]he travel time and many appointments also made it hard for [Claimant Boswell] to have a job." *Id*.

The ALJ concluded that any opinions found in Dr. Graham's statement were "vague and do not place specific functional limitations on [Claimant Boswell's] functional abilities[.]" Tr. 29. The ALJ also found that, to the extent Dr. Graham opined that Claimant Boswell could not work, such a medical opinion was reserved to the Commissioner. *Id*. Finally, the ALJ noted that, if the statement constituted an opinion, it was not consistent with the medical evidence that detailed some improvement despite Claimant Boswell's continued alcohol use. *Id*.

13

The ALJ did not err in his treatment of Dr. Graham's letter. Importantly, Dr. Graham's letter provides conclusory assessments of Claimant Boswell's condition and does not specifically opine as to what Claimant Boswell can (or cannot) do despite her impairments. Therefore, the letter does not constitute a medical opinion and the ALJ was not required to discuss its supportability or consistency. *See Megehee v. Kijakazi*, 2022 WL 14278116, at *9 (M.D. Ala. Oct. 24, 2022) (finding that a physician's "conclusory statements" that did not "assess the extent to which [the claimant] can perform any particular function in a work setting[,]" were not a medical opinion that required a specific articulation regarding persuasiveness); *Dye v. Comm'r of Soc. Sec.*, 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022) (finding that a doctor's statements were not medical opinions as the doctor's letter did not assess the extent to which the claimant could perform any particular function in a work setting, and therefore did not constitute "medical opinions" for purposes of the applicable regulatory regime). Further, to the extent the letter provides an opinion on Claimant Boswell's ability to work—i.e., that it would be "hard [for her] to have a job"—that issue is reserved to the Commissioner, and the ALJ was not required to assess the opinion's persuasiveness. *See, e.g.*, *Matthews v. Comm'r of Soc. Sec.*, 2022 WL 17844054, at *10 (M.D. Fla. Dec. 22, 2022) (reasoning that because doctors' statements that that claimant's depression and anxiety impacted her ability to work did not "specifically explain how [the claimant's] depression and anxiety impacted her ability to work and what [the claimant] could still do despite these impairments," the statements were not medical opinions). As such, the ALJ did not err in his treatment of Dr. Graham's letter.

### C. Substantial Evidence Supports the ALJ's RFC Finding

Determining a claimant's RFC is an issue reserved for the Commissioner. *Pate v. Comm'r of Soc. Sec.*, 678 F. App'x 833, 834 (11th Cir. 2017) (citing 20 C.F.R. § 404.1527(d)(2)). When making an RFC determination, an ALJ must consider the claimant's medical condition as a whole and must provide a sufficient rationale to link the evidence to his RFC determination so that a court may conduct a meaningful review of his findings. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3); *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). While an ALJ is required to consider medical opinions and prior administrative medical findings in the record in determining a claimant's RFC, he is not required to mirror the findings or opinions of any particular medical source. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *Freyhagen v. Comm'r of Soc. Sec.*, 2019 WL 4686800, at *8 (M.D. Fla. Sept. 26, 2019). Indeed, even if an ALJ finds a medical opinion persuasive, he is not required to adopt the opinion wholesale or incorporate every conclusion contained within. *See* 20 C.F.R. § § 404.1513a(b)(1); 4044.1520c(a)-(b); 416.913a(b)(1); 416.920c(a)-(b).[8]

---

[8] *See also Freyhagen*, 2019 WL 4686800, at *8 ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source . . . because the responsibility of assessing the RFC rests with the ALJ."); *Tolbert v. Kijakazi*, 2022 WL 4591646, at *2 (M.D. Ala. Sept. 29, 2022) ("There is no requirement that an ALJ include every limitation from a medical opinion verbatim in an RFC determination or specifically address every aspect of an opinion or every piece of evidence in the record."); *Powell v. Kijakazi*, 2022 WL 4000719, at *5 (S.D. Ga. Aug. 9, 2022), *report and recommendation adopted*, 2022 WL 3970838 (S.D. Ga. Aug. 31, 2022) ("[F]inding a medical opinion persuasive does not require the ALJ to fully incorporate that opinion into the RFC.").

Here, Plaintiff Boswell argues that the ALJ erred by failing to incorporate manipulative limitations into Claimant Boswell's RFC. Mot. (Doc. 17) pp. 14-15. Specifically, Plaintiff Boswell contends that the ALJ should have limited Claimant Boswell's ability to handle and/or finger based on the medical evidence suggesting that Claimant Boswell's skin condition affected her hands and fingers. *Id*. at 14. Plaintiff Boswell points to evidence showing that Claimant Boswell's skin impairment covered her whole body, including her hands; Dr. Parker's finding that Claimant Boswell had "fissuring of the hands and extensor fingers"; and Dr. Graham's statement that, because Claimant Boswell's hands were cracked, it would be "difficult to work with her hands." *Id*. at 13-15.

Importantly, though, none of this evidence shows that Claimant Boswell was actually limited in her ability to work. Indeed, the fact that Claimant Boswell's skin condition affected her hands does not mean that the condition caused work-related limitations. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (noting that the mere existence of "impairments does not reveal the extent to which they limit [the claimant's] ability to work"). Further, while Dr. Parker found that Claimant Boswell had fissuring of her hands and fingers, he explicitly opined *that she did not have any manipulative limitations*, and the ALJ found Dr. Parker's opinion persuasive. Tr. 29, 63. Finally, although Dr. Graham opined that Claimant Boswell's condition would make it difficult to work with her hands, the ALJ did not find Dr. Graham's opinion persuasive and noted that the opinion was vague. Tr. 29. Certainly, the ALJ was not required to adopt a limitation based on a non-specific medical opinion that he found unpersuasive, particularly

in light of the other evidence he considered. *See Guth v. Comm'r of Soc. Sec.*, 2022 WL 4115784, at *3 (M.D. Fla. Sept. 9, 2022) (holding that the ALJ was not required to incorporate limitations from a doctor's opinion that the ALJ found unpersuasive.).

The ALJ was required, however, to consider the evidence as a whole and to show how that evidence led to his RFC determination. And he did. Here, the ALJ clearly indicated that he considered the overall medical evidence in determining Claimant Boswell's RFC. Specifically, the ALJ noted that while Claimant Boswell experienced "symptomology related to her skin disorder," there was no evidence showing that her condition "would impact her ability to perform work related activity[.]" Tr. 28. He further reasoned that Claimant Boswell "did not seek significant treatment for these conditions beyond October 2017" and that she was not fully compliant with treatment because she continued to drink malt liquor despite recommendations that she stop. Tr. 28. Because of these and other references pertaining to Claimant Boswell's skin disorder and how it affected her ability to work, the undersigned is satisfied that the ALJ considered Claimant Boswell's skin condition as a whole and properly supported his RFC determination with substantial evidence. Therefore, the undersigned finds that the ALJ did not err by failing to incorporate manipulative limitations in Claimant Boswell's RFC.

## VI.  CONCLUSION

As explained above, the undersigned finds that the ALJ did not commit reversible error and that substantial evidence supports the Commissioner's decision. Accordingly, it is

ORDERED that the Commissioner's decision is AFFIRMED. A separate judgment will issue.

DONE this 21st day of September, 2023.

_____
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE